**No. 21-20468**

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff–Appellee,*

v.

ANDY BADENOCK,
*Defendant–Appellant.*

---

On Appeal from the United States District Court
For the Southern District of Texas
Houston Division, Case No. 4:18-CR-00405-5

---

BRIEF OF PLAINTIFF–APPELLEE

---

JENNIFER B. LOWERY
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

JOHN A. REED
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. The record and briefs adequately present the facts and legal arguments to resolve the appeal; oral argument would not significantly aid the decisional process. *See* Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF AUTHORITIES.................................................................iv

STATEMENT OF JURISDICTION.......................................................1

STATEMENT OF THE ISSUE..............................................................1

STATEMENT OF THE CASE ...............................................................1

    I.    The offense conduct................................................................2

        A.    The December 3, 2015 money seizure ...........................3

        B.    The December 30, 2015 drug seizure ...........................6

    II.    The Dicksons become informants ..........................................9

    III.    The indictment and motion to dismiss ...................................9

    IV.    The district court's ruling ....................................................12

    V.    The appeal...........................................................................13

SUMMARY OF THE ARGUMENT ......................................................13

ARGUMENT .......................................................................................14

    I.    The district court correctly denied Badenock's motion to
        dismiss based on speedy trial grounds .................................14

        A.    The standard of review ................................................14

        B.    Badenock improperly frames this as a Sixth
            Amendment case and fails to address the basis for
            the district court's denial of the motion to dismiss .....15

# TABLE OF CONTENTS, cont'd

**Page**

C.   Badenock fails to meet his burden of showing actual prejudice and bad faith by the Government ..... 18

    1.   The Government acted in good faith, and Badenock presented no evidence to the contrary. ............................................................ 21

    2.   Badenock fails to meet his burden of showing actual, substantial prejudice. ............................. 26

CONCLUSION ......................................................... 31

CERTIFICATE OF SERVICE ................................... 32

CERTIFICATE OF COMPLIANCE ......................... 33

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Barker v. Wingo*, 407 U.S. 514 (1972) ................................................. 11, 17

*Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744
    (5th Cir. 1987) ....................................................................... 17, 21

*Cherry v. Mainous*, 608 F. App'x 301 (5th Cir. 2015) (unpublished) ..... 17

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994) ................................. 16, 21

*Doggett v. United States*, 505 U.S. 647 (1992) ....................................... 17

*Jones v. City of Monroe*, No. 21-30735, 2022 WL 2527669
    (5th Cir. July 7, 2022) (unpublished) ............................................. 17

*Rubio v. Lumpkin*, No. 20-20158, 2022 WL 1449702
    (5th Cir. May 9, 2022) (unpublished) .............................................. 21

*United States v. Armstrong*, 517 U.S. 456, 464 (1996) ........................... 22

*United States v. Avants*, 367 F.3d 433 (5th Cir. 2004) ........................... 14

*United States v. Beszborn*, 21 F.3d 62 (5th Cir. 1994) ...................... 18, 30

*United States v. Campbell*, 95 F.3d 52, 1996 WL 459746
    (5th Cir. 1996) (unpublished) ........................................................ 14

*United States v. Crouch*, 84 F.3d 1497 (5th Cir. 1996) (en banc) ... *passim*

*United States v. Frye*, 489 F.3d 201 (5th Cir. 2007) ............................... 17

*United States v. Griffin*, 324 F.3d 330 (5th Cir. 2003) ........................... 15

*United States v. Gulley*, 526 F.3d 809 (5th Cir. 2008) ................... *passim*

*United States v. Jackson*, 549 F.3d 963 (5th Cir. 2008) ................. *passim*

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                              **Page(s)**

*United States v. Johnson*, 14 F.4th 342 (5th Cir. 2021) ........................ 15

*United States v. Johnson*, 619 F.3d 469 (5th Cir. 2010) ........................ 15

*United States v. Lovasco*, 431 U.S. 783 (1977) .............................. *passim*

*United States v. Marion*, 404 U.S. 307 (1971) ..................... 16, 19, 25, 26

*United States v. McBride*, 402 F. App'x 909 (5th Cir. 2010)
    (unpublished) .................................................................. 21

*United States v. Perryman*, 965 F.3d 424 (5th Cir. 2020) ..................... 21

*United States v. Proctor*, 505 F.3d 366 (5th Cir. 2007) .................... 23, 30

*United States v. Scott*, 71 F. App'x 440, 2003 WL 21417469
    (5th Cir. 2003) (unpublished) ........................................... 17

*United States v. Scroggins*, 599 F.3d 433 (5th Cir. 2010) ..................... 16

*United States v. Tavera-Jaimes*, 609 F. App'x 254 (5th Cir. 2015)
    (unpublished) .................................................................. 21

**Rules and Statutes**

Fed. R. App. P. 4(b)(1)(A)(i) .................................................... 1

Fed. R. App. P. 34(a)(2)(C) ..................................................... i

Fed. R. Crim. P. 29(c) .......................................................... 20

5th Cir. R. 28.2.2 ............................................................... 1

5th Cir. R. 47.5.4 .............................................................. 15

18 U.S.C. § 3144 ............................................................... 29

# TABLE OF AUTHORITIES, cont'd

| Rules and Statutes | Page(s) |
| --- | --- |

18 U.S.C. § 3231 .................................................................1

18 U.S.C. § 3742(a) ............................................................1

21 U.S.C. § 841(a)(1)........................................................10

21 U.S.C. § 841(b)(1)(A)(ii) ...........................................10

21 U.S.C. § 846 ..................................................................10

28 U.S.C. § 1291 .................................................................1

## Other Authorities

U.S. Const. Amend. V.......................................................18

U.S. Const. Amend. VI ....................................................15

U.S. Const. Art. II, § 3......................................................22

# STATEMENT OF JURISDICTION

Defendant–Appellant Andy Badenock appeals from the judgment of conviction and sentence imposed on August 30, 2021, and entered on September 1, 2021.  ROA.369.[1]  Badenock timely appealed on September 1, 2021.  ROA.375; *see* Fed. R. App. P. 4(b)(1)(A)(i).

The district court (Lake, J.) had jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

# STATEMENT OF THE ISSUE

Whether the district court correctly denied Badenock's motion to dismiss the indictment based on pre-indictment delay because Badenock failed to show bad faith by the Government and actual, substantial prejudice.

# STATEMENT OF THE CASE

Badenock brokered cocaine transactions for a drug trafficking organization (DTO) lead by husband and wife Deon and Regina Dickson.

---

[1] The appellate record ("ROA.") is cited in accordance with 5th Cir. R. 28.2.2.  "PSR" refers to the final presentence report dated July 12, 2021, and is also cited by both the page(s) where it appears in the record and by paragraph number(s).

ROA.610-11, 660, 855. A grand jury indicted Badenock on July 18, 2018, for conspiracy to possess with intent to distribute five kilograms or more of cocaine. ROA.17.

The indictment charged that Badenock participated in the DTO between November 2015 and January 2016. ROA.62. A jury found Badenock guilty, and the district court sentenced him to 120 months in prison and five years of supervised release. ROA.369-74, 1468.

As he did in the district court, Badenock argues on appeal that the two-and-one-half year delay between the commission of the offense and the indictment violated his Sixth Amendment speedy trial right. Appellant's brief, 14-20.

## I.   The offense conduct.

In 2015, Drug Enforcement Administration (DEA) agents began an investigation of Deon and Regina Dickson, who operated car dealerships in Houston. ROA.464, 470, 601, 783-84. In addition to their legitimate business, the Dicksons moved kilogram quantities of cocaine from Houston, Texas, to Detroit, Chicago, and Jacksonville, Florida. ROA.457-58, 464-65, 543.

In 2012, the Dicksons began dealing marijuana; they began

distributing cocaine in 2015. ROA.608, 874-75. The Dicksons had two sources for cocaine: a Mexican drug cartel and James Grady. ROA.608, 785. The Dicksons initially moved narcotics obtained from Grady to Detroit and Chicago. ROA.666-67, 670, 785, 875. They employed Raymond Marsh and several others who worked at their car lot to drive vehicles with the drugs hidden inside. ROA.472, 667, 784-85.

On November 10, 2015, DEA agents obtained a 30-day wiretap on two phones used by Deon and Regina. ROA.465. The wiretap was later extended for an additional 30 days. ROA.465. As a result of the initial wiretap, law enforcement seized 350 pounds of marijuana coming through McAllen, Texas, and 18 kilograms of cocaine in Detroit that were part of the Dicksons' organization. ROA.465, 528. The instant case concerns subsequent seizures that occurred in December 2015.

## A.    The December 3, 2015 money seizure.

Badenock worked at the Dicksons' dealership and became good friends with them. ROA.606-07, 779-81. He had moved to Houston from Jacksonville. ROA.612, 928-29. In 2014, he left the Dicksons' employment to open his own car dealership but remained close to the Dicksons. ROA.607, 782-83.

Because of his Jacksonville connections, Badenock became involved in the DTO as a broker, introducing the Dicksons to cocaine buyers in Florida in exchange for a portion of the proceeds. ROA.607, 610-12, 786-90. No one else in the organization had connections in Florida. ROA.612.

Badenock introduced the Dicksons to "Terrence," who they knew only as "T," and to Aaron McGhee, both of whom were Florida cocaine buyers. ROA.620, 786, 789. Badenock also introduced the Dicksons to Seon Guy, a good friend of his who, like Badenock, was from Trinidad. ROA.609, 613, 790. Badenock brought Guy to the Dicksons' home to discuss narcotics deals. ROA.614, 791.

In late November or early December 2015, Badenock brokered a deal with Guy to transport cocaine from the Dicksons to Jacksonville hidden in Guy's vehicle. ROA.615-16, 815. The Dicksons "fronted" the cocaine to Guy because Badenock had vouched for him, but the drugs originated from the Mexican cartel. ROA.622, 630. The cocaine was loaded into Guy's Lincoln MKZ at the Dicksons' home, and Guy drove it to Florida. ROA.616-19, 815-16.

On December 3, 2015, Deon and Regina flew to Jacksonville to collect the money that Guy owed them for the drugs. ROA.619, 817. On

that trip, the Dicksons first collected about $30,000 from T as part of a separate deal.  ROA.619, 622, 684, 817.  The Dicksons later met with Guy at their hotel and collected approximately $70,000.  ROA.624, 821. Surveilling agents observed the meeting.  ROA.899.

Agents followed Guy from the meeting and had local police conduct a traffic stop.  ROA.554, 561, 899.  Officers observed packaging material on the floorboard of Guy's car, and a K-9 alerted to the odor of drugs. ROA.563-65, 577.  A search revealed several packages of wrapping material and vacuum-seal type bags consistent with narcotics trafficking but no narcotics.  ROA.578-79.  Guy was arrested for possessing drug paraphernalia.  ROA.566-67.

The next day, Regina flew alone back to Houston with the money the Dicksons had collected from Guy and T.  ROA.625.  Agents intercepted her at the airport and seized over $100,000.  ROA.477, 594, 627.  Regina lied to the agents about the money, claiming that it was proceeds from the sale of two cars.  She produced a fake bill of sale that she had created ahead of time to explain her possession of the money. ROA.590, 627-28.  Regina was not arrested at that time.  ROA.597.

At trial, Regina admitted that the money was drug proceeds.

ROA.629.  She testified that most of the money was owed to the Mexican cartel and that the Dicksons and Badenock would have kept a portion of it as payment for the deal with Guy.  ROA.630-31.

The Government introduced recorded telephone calls that were intercepted between Regina and Badenock in which the two discussed the money seizure, the bill of sale, the Dicksons' collection of money from T, Guy's arrest, and whether Guy would talk to the police.  ROA.634-40, 699-700.  The Government also introduced a call between Badenock and Deon after Guy's arrest in which the two men were "trying to figure out where . . . the rest of the drugs or the money" were located.  ROA.823-24.  During the call, Badenock said that he was "on the hook" because of his relationship with Guy, and that "they," presumably meaning the police, "didn't get nothing" from Guy.  ROA.824-25; *see also* ROA.1101-07 (Gov't exh. 4).

**B.    The December 30, 2015 drug seizure.**

After the airport money seizure, the Dicksons were in debt to the cartel, which began harassing them for the lost cash.  ROA.644, 827. Badenock introduced the Dicksons to McGhee to arrange a drug deal that they hoped would raise enough money to repay their debt to the cartel.

ROA.645-46, 828.  Badenock vouched for McGhee and told the Dicksons that McGhee wanted to purchase cocaine.  ROA.649.

The conspirators planned for Raymond Marsh to drive multiple kilograms of cocaine at the end of December from Houston to Jacksonville, where Deon, Badenock, and McGhee would take delivery. ROA.648, 829, 841.  At trial, the Government played intercepted calls between Regina, Deon, and Badenock about the deal, which was to occur on December 29-30, 2015.  ROA.650-52, 701, 829, 832-37.

McGhee also testified about the deal at trial.  He first explained that he had been involved in an earlier cocaine deal with Badenock. ROA.712-13.  McGhee said that in about mid-December 2015 Badenock had delivered four kilograms of cocaine to Jacksonville for a very low price.  *See* ROA.710-19.  After taking delivery of those drugs, McGhee complained to Badenock that the cocaine was of poor quality.  Badenock assured McGhee that he would replace the drugs with better quality cocaine but at a higher price.  ROA.719-24, 727.  The replacement drugs were part of the December 29-30 deal.  ROA.728, 737, 767.

Meanwhile, Badenock told the Dicksons that McGhee wanted to purchase eight kilograms of cocaine.  ROA.830.  Deon and Badenock went

to Jacksonville on December 29, where they waited with McGhee for Marsh and the cocaine to arrive at an apartment that McGhee used as a stash house.  ROA.653, 829, 841.  DEA agents had the defendants and the apartment complex under surveillance.  ROA.901-02.

In the early morning hours of December 30, Deon left Badenock and McGhee at the apartment to meet Marsh at a gas station.  ROA.846, 902. Marsh followed Deon back to the apartment complex, where police stopped Marsh's vehicle with the cocaine.  ROA.849.  Deon kept driving and phoned Badenock to warn him that Marsh had been detained. ROA.849-50, 1204-06 (Gov't exh. 32).  Agents converged on the apartment and arrested Deon, Badenock, and McGhee.  ROA.744, 852, 958.

Inside the apartment, agents recovered a large amount of cash, four bricks of cocaine weighing approximately 3.7 kilograms, and two smaller quantities of cocaine weighing 8 and 37.5 grams.  ROA.908, 912-14; *see also* ROA.894 (stipulation as to drug quantity).  They also found eight kilograms of cocaine hidden in Marsh's truck.  ROA.912.

At trial, Deon confirmed that Badenock had brokered the deals that resulted in sales of cocaine to Guy and T, as well as the intended eight-kilogram deal with McGhee.  ROA.855.

## II.    The Dicksons become informants.

After their arrest, Deon and Badenock were released and made their way back to Houston.  ROA.853-54.  At some point, the DEA approached Deon, Regina, and Marsh about becoming confidential informants (CIs).  ROA.491, 602, 777.  Hoping to reduce their sentences in this case, the Dicksons began working as uncompensated CIs in approximately January or February 2016.  ROA.602, 777.  Deon worked as a CI for several years.  ROA.777.  Regina stopped working as a CI in 2018 because she violated her cooperation agreement.  ROA.547, 603.

As undercover CIs, the Dicksons purchased narcotics with money the DEA supplied, and they informed agents about the illicit activities of others.  ROA.604-05, 778, 885-87.  The DEA viewed the Dicksons as leaders or organizers of the Houston portion of the trafficking organization but not as the heads of the entire drug conspiracy.  ROA.534.  The DEA's goal when recruiting the CIs included the discovery of the source of the drugs both locally and in Mexico.  ROA.534.

## III.   The indictment and motion to dismiss.

On July 18, 2018, a grand jury charged Badenock and seven others,

including the Dicksons and McGhee, with conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count 1), in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii). ROA.17-19. The indictment alleged that the conspiracy occurred in or about September 2015 through December 2015.[2] ROA.17. The Dicksons and McGhee pleaded guilty and testified at trial. ROA.601, 705-06, 775-76.

A superseding indictment was returned on November 7, 2019, charging Badenock alone with the same drug conspiracy but amending its temporal scope to November 2015 through January 2016. ROA.62-63.

Badenock filed a combined motion to suppress the results of the wire intercept and motion to dismiss the indictment based on a violation of his right to a speedy trial. ROA.235. He argued, in relevant part, that the Government had all the evidence necessary to indict him by the end of January 2016, when the extended wiretap on the Dicksons' phones ended, but that the Government waited two-and-a-half years before indicting him while it used the Dicksons as informants. ROA.242-43. Badenock alleged that this delay caused him to lose two witnesses who

---

[2] The Dicksons, but not Badenock, were also charged in two counts for other narcotics offenses not relevant to this appeal. ROA.18-19.

could have testified on his behalf. ROA.243.

The first witness was Seon Guy, who was deported in August 2016, and who, according to Badenock's motion, would deny being involved in a cocaine transaction with the Dicksons on December 3, 2015. ROA.243. The second witness was Barry Walker, a former Enron executive and an investor in the Dicksons' car business. ROA.243-44. Walker had moved to Costa Rica and "evidently changed his phone number" in June 2017; he allegedly could have given "helpful" testimony about the source "of some of the money the Dicksons had." ROA.243-44. Badenock argued that the pre-indictment delay violated his Sixth Amendment speedy trial right under the analytical factors of *Barker v. Wingo*, 407 U.S. 514 (1972). ROA.244-46.

In response, the Government argued that *Barker* and the Sixth Amendment do not apply to Badenock's claim of pre-indictment delay. ROA.1381, 1386. The Government argued that, under the applicable due process framework, Badenock failed to show that the Government acted in bad faith or to gain a tactical advantage in the case or that he suffered actual prejudice from the delay. ROA.1387-90. The Government asserted that Badenock was not the only target of the investigation,

which continued long after 2016. ROA.1389. Further, the "ongoing investigation, volume of discovery compiled, and demanding case load of those involved were the only reasons for any delay in indicting the case." ROA.1390.

## IV.  The district court's ruling.

The district court agreed with the Government. ROA.275-303. The court first ruled that, under Supreme Court precedent, statutes of limitation—not the Sixth Amendment—provide the primary protection against pre-indictment delay. ROA.296-97. Beyond that protection, a defendant alleging pre-indictment delay under the Due Process Clause of the Fifth Amendment must prove both that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense. ROA.297.

Because Badenock was indicted well within the statute of limitations, the court examined whether Badenock met the standard for a due process violation. ROA.299. The court held that Badenock's claims of prejudice from two lost witnesses were merely speculative and failed to show the extreme prejudice necessary to violate due process. ROA.299-

300.  Furthermore, the court held that "nothing in the record suggests that" the Government's delay in indicting Badenock was "undertaken for any bad-faith or impermissible purpose."  ROA.302.

## V.     The appeal.

Badenock appeals, arguing only that the district court's denial of the motion to dismiss on speedy trial grounds was erroneous under the Sixth Amendment.  Appellant's brief, 13-20.

## SUMMARY OF THE ARGUMENT

The district court correctly denied Badenock's motion to dismiss. As a preliminary matter, Badenock improperly frames the case as implicating the Sixth Amendment.  Under Supreme Court precedent, the Sixth Amendment is not applicable to claims of improper pre-indictment delay.  Rather, statutes of limitation provide the primary protection against stale claims, and the Fifth Amendment's Due Process Clause plays a limited role.  Badenock does not analyze his claim under the due process framework.

In any event, under the proper analysis, Badenock cannot meet his burden of showing that the Government intentionally delayed the indictment in bad faith or to gain a tactical advantage, or that he suffered

the requisite actual, substantial prejudice. Badenock does not even address bad faith in his brief, and the record is devoid of evidence that would support such a claim. His claims of prejudice from the loss of two witnesses during the pre-indictment delay are the kind of speculative claims that are insufficient to show prejudice. The district court did not clearly err by denying Badenock's motion to dismiss.

## ARGUMENT

## I. The district court correctly denied Badenock's motion to dismiss based on speedy trial grounds.

### A. The standard of review.

This Court reviews "the district court's factual determinations when reviewing a motion to dismiss for pre-indictment delay for clear error; legal conclusions are reviewed de novo." *United States v. Gulley*, 526 F.3d 809, 820 (5th Cir. 2008). Whether the Government, in bad faith, intentionally delayed an indictment is a factual finding reviewed for clear error. *United States v. Avants*, 367 F.3d 433, 441 (5th Cir. 2004); *United States v. Campbell*, 95 F.3d 52, 1996 WL 459746, at *9 (5th Cir. 1996) (unpublished).[3]

---

[3] Unpublished opinions issued on or after January 1, 1996, are not precedent, except under certain circumstances not present here, but they may be persuasive. *See* 5th

Clear error exists when this Court is left with a definite and firm conviction that a mistake has been made. *United States v. Griffin*, 324 F.3d 330, 365 (5th Cir. 2003). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. *United States v. Johnson*, 14 F.4th 342, 349 (5th Cir. 2021).

> **B. Badenock improperly frames this as a Sixth Amendment case and fails to address the basis for the district court's denial of the motion to dismiss.**

As a preliminary matter, Badenock argues on appeal that the Government's delay in returning an indictment against him violated his Sixth Amendment right to a speedy trial. Appellant's brief, 14-20. He devotes most of his brief to arguing that the Supreme Court's analytical factors announced in *Barker v. Wingo* support his claim, and that the district court failed to address those factors. Appellant's brief, 14, 16-19. Badenock improperly frames the issue of pre-indictment delay as implicating the Sixth Amendment.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. Those protections are triggered only by "'a formal

---

Cir. R. 47.5.4; *United States v. Johnson*, 619 F.3d 469, 473 n.3 (5th Cir. 2010).

indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge[.]'" *United States v. Lovasco*, 431 U.S. 783, 788 (1977) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)); *see also United States v. Jackson*, 549 F.3d 963, 971 (5th Cir. 2008). An unindicted person is not an "accused." "[A]s far as the Speedy Trial Clause of the Sixth Amendment is concerned, [pre-indictment] delay is wholly irrelevant[.]" *Lovasco*, 431 U.S. at 788.

The Supreme Court has "emphasize[d] that 'the primary' protection against preindictment delay is the statute of limitations, and that the due process clause has but 'a limited role to play.'" *United States v. Crouch*, 84 F.3d 1497, 1510 (5th Cir. 1996) (en banc) (quoting *Lovasco*, 431 U.S. at 789); *see Marion*, 404 U.S. at 322 (same). The district court here correctly analyzed Badenock's claims under the Fifth Amendment's Due Process Clause. *See* ROA.296-302. By failing to recognize and address the actual basis for the district court's denial of his motion to dismiss, Badenock has failed to adequately brief and preserve the issue for review. *See, e.g.*, *United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010) (issues not briefed adequately on direct criminal appeal are waived); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An

appellant abandons all issues not raised and argued in its initial brief on appeal."); *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (failure to challenge the basis for the district court's decision is the same as abandoning arguments regarding that ruling); *accord Jones v. City of Monroe*, No. 21-30735, 2022 WL 2527669, at *2 (5th Cir. July 7, 2022) (unpublished) ("Because Jones does not address the actual basis of the district court's decision, any argument pertaining to this decision is forfeited."); *Cherry v. Mainous*, 608 F. App'x 301, 303 (5th Cir. 2015) (unpublished) ("Because [appellant] has not addressed the basis for the decision . . . he has abandoned this issue."); *United States v. Scott*, 71 F. App'x 440, 2003 WL 21417469, at *1 (5th Cir. 2003) (unpublished).

In his brief, Badenock cites and discusses only Sixth Amendment cases, including *Barker*, 407 U.S. at 514, *Doggett v. United States*, 505 U.S. 647 (1992), and *United States v. Frye*, 489 F.3d 201, 209 (5th Cir. 2007). Appellant's brief, 17-19. "This [C]ourt reviews *Sixth Amendment* speedy trial claims under a four-factor balancing test developed by the Supreme Court in *Barker v. Wingo*[.]" *Frye*, 489 F.3d at 209 (emphasis added). Because this is not a Sixth Amendment case, Badenock's briefing

of the *Barker* factors and his citation to Sixth Amendment decisions such as *Doggett* and *Frye* are inapposite.  *See*, *e.g.*, *Crouch*, 84 F.3d at 1515 ("The district court's reliance on the Supreme Court's *Doggett* decision was misplaced because *Doggett* was a Sixth Amendment post-indictment delay case."); *United States v. Beszborn*, 21 F.3d 62, 66 (5th Cir. 1994) (same).

### C.    Badenock fails to meet his burden of showing actual prejudice and bad faith by the Government.

To the extent the Court believes the issue is adequately preserved, Badenock fails to show a Fifth Amendment due process violation from pre-indictment delay.  The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  For pre-indictment delay to violate the Due Process Clause and warrant dismissal of an indictment, the delay "[must] have been intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other impermissible, bad faith purpose" *and* it must have "cause[d] the accused substantial, actual prejudice."  *Gulley*, 526 F.3d at 820.

The "bad faith" and "substantial, actual prejudice" elements are

"separate and distinct." *Id*. A defendant bears the burden to prove both prongs of the test. *Id*. Each sets a very high bar.

To show bad faith, a defendant must prove that the Government engaged in conduct that violates "fundamental conceptions of justice which lie at the base of our civil and political institutions," and which define "the community's sense of fair play and decency." *Lovasco*, 431 U.S. at 790. Thus, where a defendant can prove that pre-indictment delay was used as "*an intentional device* to gain tactical advantage over the accused" it would reflect an impermissible motive. *Marion*, 404 U.S. 307, 324 (1971) (emphasis added); *see also Lovasco*, 431 U.S. at 795 & n.17. Under that standard, where a defendant can show that the Government intentionally delayed indictment "*for the purpose of* rendering unavailable evidence favorable to the defense or which would tend to undercut the government's case" he may satisfy his burden to prove bad faith. *Crouch*, 84 F.3d at 1515 n.23 (emphasis added).

By contrast, mere investigative delay does not show bad faith or violate due process, even when the Government continues to investigate beyond the first moment at which sufficient evidence exists to seek an indictment and establish guilt. *Lovasco*, 431 U.S. at 790-96. Accordingly,

"delay to affirmatively strengthen the government's case . . . even to a level well beyond that reasonably thought necessary to preclude the granting of a post-verdict motion for judgment of acquittal under Fed. R. Crim. P. 29(c)[,]" is permissible and does not show bad faith. *Crouch*, 84 F.3d at 1515 n.23.

The burden to prove prejudice is similarly demanding. A "defendant must offer more than mere speculation of lost witnesses, faded memories or misplaced documents; he must show an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources." *Jackson*, 549 F.3d at 969. This Court has held that "in all but the very clearest and most compelling cases, the district court should carry a motion to dismiss for pre-indictment delay with the case, and make the determination of whether actual, substantial prejudice resulted from the improper delay in light of what actually transpired at trial." *Gulley*, 526 F.3d at 820 (internal quotation omitted).

Here, the district court held *both* that the delay was not improper *and* that there was no prejudice. Badenock does not argue on appeal that the district court's pre-trial prejudice ruling was premature, nor did he re-urge his motion to dismiss at the trial's conclusion. In any event, as

discussed below, the evidence at trial supports the district court's ruling.

> ### 1. The Government acted in good faith, and Badenock presented no evidence to the contrary.

Badenock nowhere on appeal addresses the district court's conclusion that the Government did not act in bad faith or to impermissibly gain a tactical advantage over him at trial. This alone should doom his appeal. Badenock bore the burden of proving that the pre-indictment delay was due to the Government's bad faith. *See Gulley*, 526 F.3d at 820. His failure to address the issue in his opening brief waives any contrary argument. *See*, *e.g.*, *United States v. Perryman*, 965 F.3d 424, 427 n.2 (5th Cir. 2020); *United States v. Tavera-Jaimes*, 609 F. App'x 254, 255 (5th Cir. 2015) (unpublished) (where appellant fails to identify error in the district court's analysis, it is the same as if he had not appealed that issue) (citing *Brinkmann*, 813 F.2d at 748); *United States v. McBride*, 402 F. App'x 909, 911 (5th Cir. 2010) (same); *Cinel*, 15 F.3d at 1345; *cf. Rubio v. Lumpkin*, No. 20-20158, 2022 WL 1449702, at *1 (5th Cir. May 9, 2022) (unpublished) ("Nowhere did Rubio argue in his opening brief that the district court erred in concluding he had failed to exhaust his state remedies. Therefore, he has abandoned the issue and

we need not review it.").

In any event, Badenock could not prevail even if he had properly addressed the issue. Particularly with respect to discretionary charging decisions, courts presume that prosecutors act in good faith. As the Supreme Court explained in *United States v. Armstrong*, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws" as officials designated "to help [the President] discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" 517 U.S. 456, 464 (1996) (quoting, *inter alia*, U.S. Const. Art. II, § 3). In light of that role, the "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* (internal quotation omitted).

Badenock offered no evidence, let alone "clear evidence," either in the district court or on appeal to overcome the presumption that the prosecutors here properly discharged their duties. Badenock's main point on appeal appears to be that "[a]ll of the evidence needed to indict [him] was in the Government's possession by the end of January 2016." Appellant's brief, 14, 16. But "[Badenock] cannot rely solely on the

passage of time to establish bad faith or improper purpose." *United States v. Proctor*, 505 F.3d 366, 370 (5th Cir. 2007). As the district court noted, Badenock was indicted well within the statute of limitations. ROA.299.

Badenock further asserts that the "paramount reason for delaying the indictment . . . for two-and-a-half years was that the DEA recruited and used the Dixons [sic] and Raymond Marsh . . . as Government informants." Appellant's brief, 15. This still does not meet his burden to show bad faith or improper motive by the Government.

The Government asserted in the district court that the investigation of targets other than Badenock involved in the DTO proceeded long after 2016 and that the only reason for any delay included the ongoing investigation, the volume of discovery, and the demanding case load of those involved. ROA.1389-90. This Court "must assume that these statements by counsel have been made in good faith." *Lovasco*, 431 U.S. at 796.

More importantly, the Government's reasons for the delay are supported by trial testimony. According to witnesses, the drug trafficking organization under investigation was large and complex,

consisted of numerous participants, and involved the transportation of substantial quantities of narcotics to and from multiple jurisdictions, including Houston, Chicago, Detroit, and Florida. *E.g.*, ROA.457, 464-65, 530-32, 543, 608-10, 684-86, 783-86, 789-90, 875. Testimony also showed that the primary reason for recruiting a CI is his or her connection to a drug trafficking organization, and that one of the goals here was to uncover the sources of cocaine not only locally but also in Mexico. ROA.534-35, 540. As part of that purpose, the Dicksons were involved in multiple investigations for the DEA and were used as CIs from 2016 to 2018. ROA.534-36, 542, 603-05, 776-77, 885-86. Badenock, who was not the only target of the overall investigation here, was indicted shortly thereafter on July 18, 2018. ROA.17.

As the district court noted, Badenock fails to explain why investigative delay and the use of CIs to uncover further information about this large trafficking organization and its sources of supply was an improper governmental purpose. *See* ROA.302. Indeed, the Supreme Court has explained that "'prosecut[ing] a defendant following investigative delay does not deprive him of due process, even if his defense might have been prejudiced by the lapse of time.'" *Crouch*, 84

F.3d at 1507 (quoting *Lovasco*, 431 U.S. at 796). That is because investigative "delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused.'" *Lovasco*, 431 U.S. at 795 (quoting *Marion*, 404 U.S. at 324). "Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." *Id*.

The initial indictment in this case charged *eight* coconspirators in a multi-jurisdictional drug conspiracy. ROA.17-19. No evidence supports the idea that the Government intentionally delayed the indictment just so that it could gain some advantage against *Badenock*.

Further, the Supreme Court's teaching shows that even if the Government had sufficient information in January 2016 to seek an indictment of Badenock, the Government was *not required* to indict. *See Lovasco*, 431 U.S. at 790-96. The Government was free to pursue further investigation which might strengthen its case. *Crouch*, 84 F.3d at 1515 n.23. Whether or not the additional investigation actually yielded more evidence against Badenock is not relevant. *See Lovasco*, 431 U.S. at 795

n.16 (where "further investigation proved unavailing and the United States Attorney ultimately decided to prosecute based solely on the [original evidence,] this fortuity cannot transform an otherwise permissible delay into an impermissible one").

In sum, Badenock fails to prove that the Government intentionally delayed the indictment to gain a tactical advantage against him. *See Lovasco*, 431 U.S. at 795 & n.17; *Marion*, 404 U.S. at 324; *Crouch*, 84 F.3d at 1515 n.23. The district court did not clearly err in finding that the delay in indicting Badenock was not undertaken for any bad-faith or impermissible purpose. ROA.302.

### 2. Badenock fails to meet his burden of showing actual, substantial prejudice.

Badenock also fails to meet his burden to prove actual, substantial prejudice from the pre-indictment delay. He reiterates his district court argument that he "lost" two witnesses during the pre-indictment period—Seon Guy and Barry Walker. Appellant's brief, 15-16. As noted above, the "mere speculation of lost witnesses" is insufficient to meet a defendant's burden to prove prejudice. *Jackson*, 549 F.3d at 969.

Badenock's own description of the alleged prejudice from these lost witnesses underscores the fact that any purported harm is speculative,

as the district court correctly held.  ROA.299 & n.114.  In the district court, Badenock characterized his prejudice merely as two lost witnesses who "*could* have testified on his behalf."  ROA.243 (emphasis added).  He repeats this characterization on appeal.  Appellant's brief, 15.

Badenock does not show an "actual loss of evidence that *would* have aided the defense and that cannot be obtained from other sources."  *Jackson*, 549 F.3d at 969 (emphasis added).  With respect to Seon Guy, Badenock asserts that Guy's testimony "could have been crucial on a hearing on the motion to suppress, and at trial," but he claims only that, in a sworn affidavit, Guy "denied having drug paraphernalia on December 3, 2015, and noted that the [Florida state] case against him being in possession of drug paraphernalia was dismissed."  Appellant's brief, 15.

Notably, nowhere in the referenced affidavit did Guy disclaim: a relationship with Badenock, knowledge of the Dicksons, or having paid the Dicksons $70,000 on December 3 in a deal brokered by Guy.  *See* ROA.256.  As noted elsewhere in this brief, the Dicksons specifically testified at trial to those facts, but Guy's affidavit does nothing to refute that testimony.  *See* ROA.256.

Additionally, intercepted calls between Badenock and Deon Dickson confirmed Guy's involvement in the deal. Following Guy's arrest, Badenock called Deon and discussed Guy being stopped in Florida while driving a vehicle with dark tinted windows and Texas tags. ROA.1415-17. Badenock noted "they didn't get nothing," which law enforcement understood to be a reference to the search of Guy's vehicle. ROA.1415-17. The call was introduced at trial. *See* ROA.823, 1102-05. While Guy's name was not mentioned, the call obviously was about Guy because the vehicle Guy was driving when stopped had Texas tags and dark tinted windows. ROA.555, 617, 1102. The contemporaneous call refutes any claim that Guy was uninvolved. Badenock has shown nothing more than speculation as to how Guy's purported testimony denying possession of drug paraphernalia might have aided his defense.

Furthermore, following his arrest in December 2015, Guy was charged with illegal reentry into the United States, and he was deported on August 16, 2016. ROA.256, 1389. The district court held that an indictment of Badenock before August 2016 would not have been sufficient alone to prevent Guy's deportation because Badenock would have to have shown Guy met the requirements of a material witness.

ROA.299-300; *see* 18 U.S.C. § 3144.  Therefore, the court held that an earlier indictment would not have changed Guy's availability as a witness.  ROA.299-300.

On appeal, Badenock merely asserts in conclusional fashion that the district court "assume[d] that Guy could not have been held as a material witness."  Appellant's brief, 19.  Yet, Badenock offers no contrary analysis, and he does not even brief how Guy's deportation could have been prevented under the material witness statute.  He fails to show the district court's findings with respect to Guy were clearly erroneous.

With respect to Barry Walker, Badenock offers even less proof of actual, substantial harm from the potential loss of testimony.  His argument in its entirety consists of the following assertions: (1) at trial, Regina Dickson confirmed Walker participated and invested in the Dicksons' legitimate car business; (2) Walker is a former Enron executive who was funding the "floor plan" of the Dickson's luxury car business; (3) Walker moved to Costa Rica in June 2017 and "evidently" changed his phone number; and (4) Walker's testimony would have been "helpful" in a hearing on the motion to suppress and at trial.  Appellant's brief, 16.

Because Badenock does not explain on appeal how Walker's

testimony would have been exculpatory or otherwise aided the defense, Badenock fails to show actual, substantial prejudice from the pre-indictment delay. *See Proctor*, 505 F.3d at 370 (rejecting claim of prejudice from unavailability of witness where defendant did not show testimony would have been exculpatory or that it would have aided the defense) (citing *Beszborn*, 21 F.3d at 66 (same)); *see also Jackson*, 549 F.3d at 970.

In the district court, Badenock argued that Walker's testimony "*may have* been able to corroborate" Regina Dickson's original story to police that the money she was carrying in the airport on December 3 came from the sale of two cars in Florida. ROA.268 (emphasis added). This is exactly the kind of "speculation of lost witnesses" that fails to demonstrate "an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources." *Jackson*, 549 F.3d at 970 (internal quotation and citation omitted). "[B]ecause actual, substantial prejudice to the defense at trial is required, a showing of mere potential or possible trial prejudice does not suffice." *Crouch*, 84 F.3d at 1523 (emphasis omitted). Badenock fails to show more than speculative prejudice with respect to the alleged lost testimony of both Walker and

Guy.

In sum, Badenock has failed to meet his burden of demonstrating both (1) that the Government intentionally delayed the indictment specifically to gain an advantage over him or for some other bad-faith purpose and (2) that as a result he suffered actual, substantial prejudice to his defense. *Gulley*, 526 F.3d at 820; *Crouch*, 84 F.3d at 1500. The district court correctly denied Badenock's motion to dismiss the indictment.

## CONCLUSION

This Court should affirm the district court's judgment.

Respectfully submitted,

JENNIFER B. LOWERY
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

*s/ John A. Reed*
JOHN A. REED
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

# CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2022, an electronic copy of Plaintiff–Appellee's Brief was served by notice of electronic filing via this court's ECF system upon opposing counsel, Mervyn M. Mosbacker, Jr.

Upon notification that the electronically filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be submitted to the Clerk. *See* 5th Cir. R. 25.2.1; 5th Cir. R. 31.1; 5th Cir. ECF filing standard E(1).

*s/ John A. Reed*
JOHN A. REED
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **5,967** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3.     This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.     This brief complies with the electronic submission of 5th Cir. R.25.2.1, because it is an exact copy of the paper document.

5.     This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security scanning program and is free of viruses.

s/ *John A. Reed*

JOHN A. REED

Assistant United States Attorney

Dated: August 3, 2022
